UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRENDA MARIELA OTINIANO BRENA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00931-JMS-MJD |
| | ) | |
| SAMUEL OLSON, | ) | |
| MARKWAYNE MULLIN, | ) | |
| TODD BLANCHE, | ) | |
| TODD LYONS, | ) | |
| RICHARD KELLY, | ) | |
| NATASHA DOUGLAS, | ) | |
| | ) | |
| Respondents. | ) | |

**Order Granting Petition for Writ of Habeas Corpus**

Brenda Mariela Ontiniano Brena is an immigrant detainee. She came to the United States with her family at age 19 to escape death threats. She arrived in the United States in September 2022. Nearly three and a half years later, in February 2026, Ms. Ontiniano Brena was arrested by officers from Immigration and Customs Enforcement ("ICE") pursuant to a warrant for removal proceedings. She has been detained ever since pending resolution of the removal proceedings.

Ms. Ontiniano Brena now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 1 at ¶ 12; *id.* at 48. The respondents, through the United States Attorney General, submitted its return to the petition on May 13, 2026, dkt. 9, and Ms. Ontiniano Brena replied in support of the petition on May 18, 2026. Dkt 11.

For the reasons explained below, the Court **grants** the petition to the extent that no later than **5:00 p.m. on May 26, 2026**, the respondents must either: (1) afford Ms. Ontiniano Brena an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its

regulations; or (2) release Ms. Ontiniano Brena from custody, under reasonable conditions of supervision.

## I.  Background

Ms. Ontiniano Brena is a native of Peru. She fled that country with her mother, sister, brother, and nieces to escape death threats towards her family. Dkt. 1 at ¶ 34. She travelled to the United States and arrived in Arizona. *Id.* There, Ms. Ontiniano Brena encountered border patrol agents near San Luis and was taken into custody on September 15, 2022. *Id.* Three days later, she was released from custody and paroled pursuant to an I-94 document because the detention facility lacked capacity. *Id.*

After her release, Ms. Ontiniano Brena briefly resided in Florida but relocated to Illinois due to Hurricane Ian in late September 2022. *Id.* at ¶ 37. While in Illinois, she made several attempts to update her address with ICE via telephone and email. *Id.* at ¶ 39. She was ultimately successful in updating her address in December 2022, which was confirmed by the ICE office in Chicago. *Id.* Ms. Ontiniano Brena also filed an application for asylum with the United States Citizenship and Immigration Services ("USCIS") in July 2023. *Id.* at ¶ 38. Since then, in April 2024, Ms. Ontiniano Brena married her husband, a naturalized United States citizen. Dkt. 1 at ¶ 40.

Nearly a month after she married her husband, ICE issued Ms. Ontiniano Brena a Notice to Appear on May 2, 2024, which initiated removal proceedings against her. *Id.* at ¶ 41. However, the notice was served at the Florida address Ms. Ontiniano Brena provided to border patrol agents in September 2022. *Id.* As a result, she was unaware of the notice and the removal proceeding, *id.*, which was held on October 2, 2025, without Ms. Ontiniano Brena. The immigration judge concluded that she had not been "admitted, inspected, or paroled by an immigration officer." *Id.* at

2

¶ 42; dkt. 1-12; dkt. 9 at 2. Ms. Ontiniano Brena was ordered removed to Peru as a result. *Id.* Despite the removal order, she maintained contact with ICE during check-in meetings. *Id.* at ¶ 43.

Months later, during a virtual check-in at the end of January 2026, ICE told Ms. Ontiniano Brena that her and her family's next check-in would take place on February 5, 2026. *Id.* The appointment confirmation contained no reference to the removal order or indicated that she would be detained. *Id.* But, while at the February meeting, she was arrested by ICE agents and ultimately taken to the Clinton County Jail in Frankfort, Indiana.[1] Dkt. 1 at ¶ 43.

Shortly after her arrest, Ms. Ontiniano Brena sought to reopen the removal proceedings on February 11, 2026, and the request was granted on February 20, 2026. *Id.* at ¶ 44. The immigration judge rescinded the removal order and reopened the removal proceedings. *Id.* A new master hearing was scheduled for March 25, 2027, which is scheduled to take place in Chicago, as the removal proceedings were transferred from Miami. *Id.* The next hearing for the removal proceeding is scheduled to take place in Chicago on May 28, 2026. *Id.*

While her removal proceeding was pending, Ms. Ontiniano Brena submitted a Form I-130, Petition for Alien Relative, with USCIS. *Id.* at ¶ 45. As a part of that process, she was scheduled to interview with USCIS on May 8, 2026. *Id.* Ms. Ontiniano Brena also filed a Form I-485, Application to Register Permanent Residence or Adjust Status, in the hopes that she might adjudicate the application at the May 28, 2026, hearing. *Id.* However, Ms. Ontiniano Brena remains detained, which has hampered her efforts to litigate her immigration status. *Id.* at ¶ 46. It is unclear if she has been able to attend the hearings for her respective applications in any capacity. *See, generally, id.*

---

[1] On May 18, Ms. Ontiniano Brena represented that she had been transferred the Clark County Jail in Jeffersonville, Indiana. Dkt. 11 at 3.

ICE's detention of Ms. Ontiniano Brena is pursuant to the Notice to Appear and warrant for her detention. Dkt. 1-11 at 2; dkt. 9-2 at 1; dkt. at 9-3 at 27. The notice charges Ms. Ontiniano Brena with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. 1-11 at 2; dkt. 9-2 at 1. The "arriving alien" checkbox is unmarked. *Id.*

## II.   Discussion

Ms. Ontiniano Brena claims her current detention is unlawful because it violates the INA (Count I), and the Due Process Clause of the Fifth Amendment (Count III). Dkt. 1 at 44-48. On alternative grounds, she asks the Court to find her detention unlawful because her parole was unlawfully revoked (Count II), she was denied due process when she was deprived of an opportunity to respond to the removal proceedings and parole revocation (Count IV), and her parole was arbitrarily revoked in violation of the Administrative Procedure Act (Count V). *Id.*

In response to Ms. Ontiniano Brena's unlawful detention claims, the respondents argue that Ms. Ontiniano Brena is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A) and that § 1226(a) is inapplicable. Dkt. 9. With respect to Ms. Ontiniano Brena's remaining claims, the respondents state that her parole terminated automatically, and her parole termination and removal proceedings are unreviewable by this Court.

The Court finds that Ms. Ontiniano Brena's detention is governed by § 1226(a) and that it is unlawful because she has not been afforded a bond hearing pursuant to federal law. Because Ms. Ontiniano Brena is entitled to habeas corpus relief on these grounds, the Court does not address the due process challenge to her detention. The Court also declines to address her alternative

4

grounds for relief, *i.e.*, whether her parole was unlawfully revoked and whether she was denied due process in the removal proceedings.

### A. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings under 8 U.S.C. § 1229a, also known as "full removal," are initiated by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond . . . ; or

(B) conditional parole[.]

8 U.S.C. § 1226(a).

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen

"may secure her release if she can convince the officer or immigration judge that she poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that she or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B. Ms. Ontiniano Brena Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

Ms. Ontiniano Brena argues that the statute's text, framework, and prior usage make it so that she can only be detained under § 1226(a). Based on the record in this case, the Court agrees. The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Ontiniano Brena who have lived in the interior of the United States for years. *See, e.g., Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029424, *3–5 (S.D. Ind. Oct. 30, 2025). As the Court has previously explained, the respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See, e.g., Alejandro*, 2025 WL 2896348, at *14–19.

In *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, a decision that carries persuasive authority due to its procedural posture,[2] the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. 161 F.4th 1048, 1061 (7th Cir. 2025) (*Castañon-Nava I*). This Court has applied those established canons of statutory interpretation in its previous cases and has reached the same conclusion.

---

[2] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

The respondents in essence urge the Court to deviate from its previous decisions. They support that position with citations to decisions upholding the government's interpretation of § 1225(b)(2)(A), including two recent circuit court decisions: *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026), and *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026)).

In *Buenrostro-Mendez*, the Fifth Circuit found that "seeking admission" is a permissible redundancy for "applicant for admission." 116 F.4th at 503. In *Avila*, the Eighth Circuit similarly held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." 170 F.4th 1128, 1135 (8th Cir. 2026).

In contrast, three circuit courts have rejected the respondents' expansive interpretation of § 1225 in recent weeks and embraced reasoning similar to the Seventh Circuit's in *Castañon-Nava I. See Lopez-Campos, et al. v. Raycraft, et al.*, Nos. 25-1965/1969/1978/1982, --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026)[3]; *Hernandez Alvarez v. Warden*, et al., No. 25-14065, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026);[4] *Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).[5]

---

[3] "We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them. And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226." *Id.* at *11.

[4] "Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Id.* at *21.

[5] "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive." *Id.* at *4. "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find

8

The Court is not convinced that the Seventh Circuit will depart from *Castañon-Nava I* (and disagree with the Second, Sixth, and Eleventh Circuits) to instead follow *Buenrostro-Mendez* or *Avila*. Therefore, the Court continues to rely on *Castañon-Nava I* as persuasive precedent.[6] Accordingly, the Court concludes that Ms. Ontiniano Brena is entitled to a bond hearing under § 1226, and it declines to reach her alternative grounds for relief.

## III.    Scope of Relief

Ms. Ontiniano Brena is entitled to habeas relief because her continued detention without a bond hearing violates the " laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Ms. Ontiniano Brena requests immediate release from custody or, alternatively, an individualized bond hearing. Dkt. 1 at 5. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Ms. Ontiniano Brena's immediate release and instead orders the respondents to provide her with an individualized bond hearing as required by § 1226(a) and its regulations.

## IV.    Conclusion

---

the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive. . . . [B]ecause Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at *4, *6.

[6] Just after the briefing on the petition in this case, the Seventh Circuit issued its merits ruling in *Castañon-Nava*, --- F.4th ----, 2026 WL 1223250 (7th Cir. May 5, 2026) (*Castañon-Nava II*).  The ultimate issue in *Castañon-Nava* was ICE's compliance with a consent decree prohibiting it from arresting noncitizens without warrants. While one judge reaffirmed the § 1225-1226 analysis that resolved the preliminary injunction motion, one reaffirmed his dissent from that analysis, and one found the § 1225-1226 issue was not necessary to resolve the case on the merits. Accordingly, *Castañon-Nava I*'s preliminary injunction ruling remains persuasive authority as the only Seventh Circuit decision on the § 1225-1226 issue.

9

The Court **grants** the petition to the extent that no later than **5:00 p.m. on May 26, 2026**, the respondents must either: (1) provide Ms. Ontiniano Brena with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Ms. Ontiniano Brena from custody, under reasonable conditions of supervision. The Court **orders** that, no later than **12:00 p.m. on May 28, 2026**, the respondents must file documentation certifying that they have provided Ms. Ontiniano Brena with a bond hearing, including apprising the Court of the results of the hearing. If the respondents release Ms. Ontiniano Brena, then they must file documentation certifying her release.

The **Clerk** is **directed** to add Scott Maples to the docket as a respondent and terminate Natasha Douglas. The **Clerk** is **directed** to issue process to Scott Maples, which shall consist of the petition [dkt. 1], the order to show cause [dkt. 4], and this order. Scott Maples shall have through **Friday, May 22, 2026,** to answer the petition.  The Court withholds final judgment until Scott Maples answers the petition.

**IT IS SO ORDERED.**

Date: 5/20/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

 with cc to:

    R. Jeffrey Lowe
    KIGHTLINGER & GRAY, LLP
    jlowe@k-glaw.com