UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRENDA MARIELA OTINIANO BRENA,    )
                                  )
                    Petitioner,   )
                                  )
v.                                )   No. 1:26-cv-00931-JMS-MJD
                                  )
SAMUEL OLSON, *et al.*,           )
                                  )
                    Respondents.  )

**Order**

Brenda Mariela Otiniano Brena is an immigrant detainee who filed a petition for a writ of habeas corpus arguing that she was wrongfully being held in mandatory detention under § 1225(b)(2)(A). The Court agreed that she fell under 8 U.S.C. § 1226(a) and granted her petition to the extent that she was entitled to an individualized bond hearing pursuant 8 U.S.C. § 1226(a) and its regulations. Dkt. 12.

A bond hearing was held in the Indianapolis Immigration Court on May 22, 2026, and the immigration judge denied Ms. Brena's request for bond.

Ms. Brena has now petitioned the Court to enforce its order granting her habeas petition. Dkt. 24. She has also filed an emergency motion for release pending adjudication of the amended motion. Dkt. 25.

For the reasons explained below, the Court finds that Ms. Brena has made a substantial showing that the bond hearing did not comply with due process. However, the Court finds that the appropriate remedy is to order that a second bond hearing be held that provides Ms. Brena with sufficient notice so that she may adequately prepare for the hearing.

## I. Background

### A. Background and Proceedings Before Court's Order Granting Habeas Relief

Ms. Brena fled her native country, Peru, for the United States with family members to escape death threats. Dkt. 1. Once in the United States, Ms. Brena encountered border patrol agents near San Luis, Arizona, and was taken into custody on September 15, 2022. *Id.* Three days later, she was released from custody and paroled pursuant to an I-94 document. *Id.* Ms. Brena eventually settled in Champagne, Illinois, where she met and married her husband, a naturalized United States citizen. Dkt. 1 at ¶ 40.

During her time in the United States, Ms. Brena applied for asylum with the United States Citizenship and Immigration Services ("USCIS"), *id.* at ¶ 38; kept ICE apprised of her current address and information, *id.* at ¶ 37–39; submitted a form I-130, Petition for Alien Relative, and I-485, Application to Register Permanent Residence or Adjust Status, with USCIS, *id.* at ¶ 45; and married her husband, a naturalized U.S. citizen. *Id.* at ¶ 40.

On May 2, 2024, ICE issued Ms. Brena a Notice to Appear for removal proceedings, which was sent to a previous address. *Id.* at ¶ 41.[1] A hearing on the removal proceeding was held in Miami without her presence and she was ordered removed. *Id.* at ¶ 42; dkt. 1-12; dkt. 9 at 2. Despite the removal order, Ms. Brena maintained contact with ICE during regular check-in meetings. Dkt. 1 at ¶ 43.

At one such check–in, ICE arrested her on February 5, 2026, and ultimately took Ms. Brena to the Clinton County Jail in Frankfort, Indiana. *Id.* at ¶ 43.[2] Shortly after her arrest, Ms. Brena's

---

[1] Ms. Brena states that she briefly resided in Florida before relocating to Illinois due to hurricane Ian. The Florida address was provided to border patrol agents in September 2022 when she came to the United States. Dkt. 1 at ¶ 37. Ms. Brena states she attempted to inform ICE of the address change.

[2] On May 18, 2026, Ms. Brena was transferred from Clinton County in Franklin, Indiana, to Clark County Jail in Jeffersonville, Indiana. Dkt. 13.

request to reopen the removal proceedings was granted on February 20, 2026. *Id.* at ¶ 44. The immigration judge rescinded the removal order and reopened the removal proceedings. *Id.* A new master hearing was scheduled, and her case was transferred to Chicago. *Id.*

On May 7, 2026, Ms. Brena filed a petition for writ of habeas corpus in this Court, dkt. 1, challenging her mandatory detention as unlawful under the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment, the Administrative Procedures Act, and the *Accardi* Doctrine. Dkt. 1 at 44.

**B. The Court's Order and the Subsequent Bond Hearing**

On Wednesday, May 20, 2026, the Court granted the petition as to the claim that Ms. Brena's detention was unlawful under § 236 of the INA, or 8 U.S.C. § 1226, because she had been denied the opportunity for a bond hearing. Dkt. 12. The Court ordered Respondents to provide her with an individualized bond hearing pursuant to § 1226 and its regulations by 5:00 p.m. on May 26, 2026. *Id.* May 26 was the Tuesday after Memorial Day, thus leaving only three business days for the hearing to be scheduled.

On May 21, 2026, the immigration court scheduled a bond hearing for the following day, Friday, May 22, at 10:30 a.m. (Eastern). Dkt. 25 at 4. The hearing was scheduled in an immigration court in Indianapolis rather than Chicago, where Ms. Brena's removal proceedings were pending at the time. Dkt. 25-1.

Before the bond hearing, Immigration Judge Valerie Burch issued an order in which she stated that all bond evidence must be filed "2 business days prior to the bond hearing." Dkt. 24-2. The order also commanded that any fact witnesses appear in person because the judge felt she could not assess witnesses' credibility over WebEx. *Id.*

3

Ms. Brena and her counsel appeared by video for the bond hearing. Dkt. 25-2 at 2. Ms. Brena's counsel confirmed that, as the petitioner, she bore the burden of establishing that she did not pose a danger to the community or a risk of flight. *Id.* at 2.

At the hearing, Ms. Brena told the judge that she "didn't know" that she had court that day. *Id.* at 19. The judge did question Ms. Brena about her underlying asylum claim, her ability to support herself in the United States, her failure to appear for her removal proceeding, and other matters. *See, generally, id.* When her attorney was questioned about whether Ms. Brena's efforts to keep her address updated were in the record, her attorney responded that it was in her removal proceeding records, but not her bond hearing record. *Id.* at 10-11.

Judge Burch denied Ms. Brena's request for bond based on her conclusion that she was a flight risk. *Id.* at 20-22.

The morning of her hearing, Ms. Brena filed an emergency motion to enforce the order granting relief, dkt. 20, which was withdrawn and refiled because the bond hearing concluded without resolution of the motion. Dkt. 21. The amended motion to enforce the order granting relief was refiled on June 3, 2026, dkt. 24, along with motion for immediate release pending resolution of the motion to enforce and for a preliminary injunction pending. Dkt. 25. The latter motion was set for accelerated briefing and is now ripe. Dkts. 27, 28.

## II. Jurisdiction

Respondents argues that the INA precludes the Court from reviewing the discretionary bond decisions of the Attorney General. They also argue in the alternative that the Court should deny the motion without prejudice for failure to exhaust administrative remedies.[3] Each is addressed in turn.

---

[3] *See* 8 C.F.R. § 1003.38 (Appeals to the Board of Immigration Appeals).

### A. Judicial Review

As an initial matter, Respondents argue that the Court is precluded from reviewing Ms. Brena's current claims. They argue that 8 U.S.C. § 1226(e) prevents the Court from reviewing the Attorney General's "discretionary bond denial under § 1226(a)." Dkt. 27 at 7. They also argue that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review.

Neither statute, however, prevents this Court's inherent authority to determine compliance with the Court's conditional habeas writ. *Jensen v. Pollard*, 924 F.3d 451, 454 (7th Cir. 2019) ("When a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance." (citing *Hudson v. Lashbrook*, 863 F.3d 652, 656 (7th Cir. 2017))). "[A] federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, [and] the court has the authority to see that its judgment is fully effectuated." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 235 (W.D.N.Y. 2019) (citing *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010)).

And although § 1226(e) precludes this Court's jurisdiction over a review of the immigration judge's discretionary decision, the statute does not deprive the Court of jurisdiction over Ms. Brena's claim that the process by which the bond hearing was held violated her right to due process. *Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) ("Section 1226(e) likewise deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions. The district court therefore had jurisdiction under § 2241."); *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008). Thus, the Court has jurisdiction to review whether the process by which the bond hearing was held satisfied due process. *Trejo v. Bullock*, No. 3:26-CV-47, 2026 WL 598391, at *2 (E.D. Tenn. Mar. 3, 2026) (court had jurisdiction to review whether bond hearing "satisfied due process or otherwise suffered

some defect that rendered it noncompliant with th[e] Court's Order"); *Espana v. Nessinger*, No. 26-CV-014-JJM-PAS, 2026 WL 821788, at \*6 (D.R.I. Mar. 25, 2026) ("A district court retains jurisdiction to ensure compliance with its earlier order granting a petitioner habeas relief.").

The respondents also invoke another statutory limit on judicial review, which states, in relevant part: "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). However, courts have held that § 1252(a)(2)(B)(ii)—like § 1226(e)—does not apply to constitutional challenges or questions of law. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While § 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA."). To the extent Ms. Brena argues that her bond hearing was contrary to the Court's order, *e.g.*, due process grounds, § 1252(a)(2)(B)(ii) is not a jurisdictional bar.

## B. Exhaustion

"[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). There is a "general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* at 144–45. The Court has discretion to depart from the general rule and find that "individual interests demand that exhaustion be excused when:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because

6

the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (quoting *Iddir v. INS*, 301 F.3d 492, 498 (7th Cir. 2002)).

The Court declines to require exhaustion of administrative remedies, as the Court is ordering compliance with its order. As discussed below, the Court ordered a constitutionally adequate bond hearing, which was not done in this case. Thus, the Court finds it inappropriate to require Ms. Brena to exhaust her claims through the Board of Immigration Appeals.

### III. Discussion

Ms. Brena seeks a preliminary injunction and asks the Court to enjoin Respondents from further detention pending resolution of her emergency motion to enforce. The premise behind the motion for immediate release and preliminary injunction ("motion for release") is that Ms. Brena meets the standard for release on bail because she has a substantial due process claim, or because Respondents failed to comply with the Court's order. Dkt. 25 at 8. In the alternative, Ms. Brena is entitled to temporary relief and seeks to enjoin Respondents from further detaining her, as she has a shown a likelihood of success on the merits of her due process claim.

The Court agrees that Ms. Brena has shown that the circumstances resulted in the absence of meaningful review. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citing *Plyler v. Doe*, 457 U.S. 202, 210 (1982)). *See also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J. G. G.*, 604 U. S. 670, 673 (2025))).

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* (quoting *Jones v. United States*, 463 U.S. 354, 361 (1980)).

When assessing whether a bond hearing complied with an immigrant detainee's right to due process, courts typically apply the standards established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021).

The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The first factor weighs in favor of Ms. Brena, given the interest she has in freedom from being detained while her removal proceedings are ongoing. *Zadvydas*, 533 U.S. at 695.

The second factor weighs heavily in Ms. Brena's favor. A right to be heard is fundamental. *See Mathews*, 424 U.S. at 333 ("The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168, (1951) (Frankfurter, J., concurring))). To serve that end, the "fundamental requirement of due process is the opportunity to be heard *at a meaningful time and in a meaningful manner*.'" *Mathews*, 424 U.S. at 333 (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))) (emphasis

added). This "requires notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties' and that 'afford[s] a reasonable time ... to make [an] appearance.'" *A. A. R. P.*, 605 U.S. at 94-95 (alterations in original) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Ms. Brena argues that she did not have sufficient notice, which materially limited her ability to meet her burden for release on bond at the hearing. This is evident in the record. At the hearing, part of Judge Burch's decision rested on Ms. Brena "fail[ing] to appear for a court hearing [where] an in abstentia order was entered against her." Dkt. 24-1 at 22. Judge Burch concluded, "Given the respondent's failure to appear for a previous hearing and failure to update her address, the court does not believe there is any condition of release or amount of bond that can ensure her appearance." *Id.* But Ms. Brena testified that she "sent several emails with [her] new address," *id.* at 17, and her counsel argued that she had timely updated her address, which was confirmed by ICE. Dkt. 24-1 at 11. Ms. Brena argues that she did not have sufficient time to provide documentation evincing the address change, which appears to be material in the immigration court's decision. *Id.* at 22. Further, the judge's order provided that she was supposed to file her evidence two business days before the hearing—an impossible demand given the 24-hour notice.

Moreover, Ms. Brena has shown that she had insufficient time to call fact witnesses, which were required to appear in person per Judge Burch's order, dkt. 24-2. She argues that, with less than one day of notice, this was insufficient time because both her familial ties and spouse live in or around Champaign-Urbana, Illinois. Dkt. 24 at 33. When asked whether she asked her husband to testify at the hearing, Ms. Brena responded, "No." Dkt. 25-2 at 19. When asked why, she stated, "Because I didn't know that I had [] court today." *Id.*

Ms. Brena argues that inability to call fact witnesses was compounded by Respondents moving her from Clinton County, Indiana, to the Clark County Jail merely days before the Court issued its order granting habeas relief. *Id.* at 7. Respondents do not address the reason for moving Ms. Brena and instead only acknowledge that it occurred. Dkt. 27 at 2-3. By itself, it does not lend support to violation of the Court's order or result in a violation of Ms. Brena's due process rights. But, under the circumstances, it raises an inference of an attempt to frustrate the spirit of the Court's order. Clinton County is within the jurisdiction of the Chicago Immigration Court where her removal proceedings had been pending and where her bond hearing would have been held absent the move.[4] When she was relocated to Clark County, her bond hearing would have been held in Indianapolis.[5] The Court is unimpressed with Respondents' lack of discussion on this issue. Regardless, because the hearing was held at a distant court on short notice, Ms. Brena lacked the opportunity for meaningful review of her claims.[6] As an aside, this Court notes the role it played in creating a short timeline by ordering the bond hearing to be held within a very short timeframe over a holiday weekend. It takes its role in account as it considers future habeas petitions requesting bond hearings.

The third factor- the government's interest- weighs in favor of the government, but only slightly. This Court acknowledges that ordering a second bond hearing imposes an administrative burden on an already very busy immigration court. But this burden does not compare to being incarcerated due to a procedurally deficient hearing in the first place.

---

[4] *See* https://www.justice.gov/eoir/immigration-court-administrative-control-list (last visited June 5, 2026).
[5] *See id.*; *see also* 8 C.F.R. 1003.19(c).
[6] While Ms. Brena also argues that her habeas counsel was unable to attend the hearing, the records clearly reflects that she was represented by counsel at the hearing. And the Court declines to find bias at the bond hearing on the record presently before the Court (dkt. 24 at 2).

Ultimately, Ms. Brena's bond hearing did not afford her the due process protections afforded by *Matthews*. The Court finds that the proper remedy here is for the immigration court to hold another bond hearing that complies with due process.

### IV. Conclusion

For the foregoing reasons, Ms. Brena's emergency motion for release, dkt. [25] and amended motion to enforce, dkt. [24], are **granted in part and denied in part**.

The motions are **granted** to the extent that the Court finds that Ms. Brena's bond hearing did not comply with the due process mandates of *Mathews v. Eldridge*, 424 U.S. 319 (1976). They are **denied** to the extent that Ms. Brena seeks immediate release. Rather, the Court orders that Ms. Brena have a second de novo bond hearing that complies with *Mathews*, 8 U.S.C. § 1226(a), and its regulations, no fewer than **14 days** from the date of this Order. The Court expects that at the hearing, Ms. Brena will be afforded a reasonable opportunity to present witness testimony and any other evidence and that she and counsel will receive no less than 3 business days' notice of the hearing. The respondents must also notify this Court of the date that the bond hearing is set.

In the alternative, the respondents may release Ms. Brena from custody, under reasonable conditions of supervision.

The respondents must file a notice within 48 hours of Ms. Brena's second bond hearing or release, apprising the Court of the result.

Given that the Court received all briefing necessary to issue its decision on the motion to enforce, the briefing schedule issued on May 28, 2026, is **vacated**.

**IT IS SO ORDERED.**

Date: 6/5/2026

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

All Electronically Registered Counsel